**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARRIE SAKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAIRGENICS LLC,<br><br>Defendant. | Case No. 2:26-cv-11068<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Carrie Saks ("Plaintiff") brings this action on behalf of herself and all others similarly situated against HairGenics LLC ("Defendant" or "HairGenics"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings claims on behalf of herself and all others similarly situated who purchased Defendant's Propidren Hair Growth Dietary Supplement (the "Product").

2. Defendant prominently represents that the Product stimulates hair follicles to regrow hair, stops and prevents hair loss, and blocks DHT, on Amazon.com ("Amazon"), on the Product's packaging, and in Defendant's other marketing and advertising materials, including but not limited to the following ("Advertised Claims"):

- "Stimulates Follicles to Regrow Hair";
- "Hair Growth Capsules";
- "Hair Regrowth Treatment";
- "Saw Palmetto is Clinically Proven to Help Stop Hair Loss and to Induce Hair Regrowth";
- "Stops / Prevents Hair Loss";
- "Formulated by Doctors to Regrow Hair";
- "Start Seeing Hair Growth in 60 Days";
- "Prevents and Reverses Hair Loss";
- "Energizes Follicular Hair Growth";
- "Regrows and Thickens Hair";
- "Helps Future Hair Growth";

- "Improves Scalp Circulation";
- "Clinically Proven to Stop Hair Loss and Help Regrow and Thicken Hair";
- "100% Safe and Effective".

3. But these claims are false and misleading. Defendant does not merely lack substantiation for the Advertised Claims; the Advertised Claims are affirmatively untrue. No clinical trial has ever been conducted on the Product, so Defendant's representation that the Product's formula contains "clinically proven" ingredients asserts the existence of proof that does not exist. The saw palmetto in the Product is not the standardized preparation used in the studies on which any claim of clinical proof could conceivably rest. The published literature affirmatively refutes Defendant's biotin representations as to consumers who are not biotin deficient. And because Defendant markets the Product as a treatment that prevents, stops, and reverses hair loss, the Product is an unapproved new drug and is misbranded under federal and California law, and cannot lawfully be sold at all.

4. Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (4) Breach of Express Warranty; (5) Unjust Enrichment; and (6) violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq*.

## **PARTIES**

5. Plaintiff Carrie Saks is a citizen of California and a resident of Manhattan Beach, California, which is within this District. On or about October 8, 2023, Plaintiff purchased the Product through Defendant's listing on Amazon.com for $49.27. Before completing her purchase, Plaintiff viewed Defendant's Amazon listing, including the product title, the listing images depicting the front and back of the Product's

packaging, and the "About this item" section, and she read and relied on the Advertised Claims appearing there, including the representations that the Product "Prevents Hair Loss and Stimulates Follicles to Regrow Hair," that saw palmetto "is clinically proven to help stop hair loss and to induce hair regrowth," and that the Product is "100% Safe & Effective." Each of those representations appeared on Defendant's listing on the date of Plaintiff's purchase. Plaintiff understood the "clinically proven" representation to mean that clinical testing had been performed and had shown the Product to work as advertised. Those representations were material to her decision and were part of the basis of the bargain. At the time of purchase, comparable hair supplements that made no clinical-proof or hair-regrowth claims sold for less, and thus Plaintiff paid a price premium attributable to the Advertised Claims. Plaintiff did not receive the benefit of her bargain. Had she known the truth, she would not have purchased the Product or would have paid substantially less for it.

6. Plaintiff did not discover, and in the exercise of reasonable diligence could not have discovered, that the Advertised Claims were false until early 2024. The falsity of the Advertised Claims is not apparent from use of the Product: a consumer who takes the Product and does not regrow hair cannot tell whether the Product does not work or whether she has not taken it long enough, and Defendant's own instructions state that the Product "should be taken for at least 90 days to start seeing significant hair growth and regrowth." Any applicable limitations period is therefore tolled by the discovery rule, and by Defendant's continuing course of conduct in disseminating the Advertised Claims to this day.

7. Plaintiff remains interested in purchasing the Product from Defendant in the future. Plaintiff would purchase a reformulated version of the Product, or a version whose label accurately described its capabilities, if such a version were available. However, unless and until she can determine if the Product's benefits are accurately represented and marketed, Plaintiff will be unable to rely on the truth of Defendant's labeling. So long as the Product is marketed and advertised as capable of stimulating

hair regrowth and preventing hair loss—including but not limited to representations that it "Stimulates Follicles to Regrow Hair" and is "Clinically Proven…to Stop Hair Loss and Help Regrow and Thicken Hair"—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products. Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually conforms to Defendant's marketed representations. A previously deceived consumer retains standing to seek injunctive relief against false advertising because she faces an actual and imminent threat of future harm: "knowledge that a representation was false in the past is not knowledge that it will remain false in the future[,]" and Plaintiff cannot determine, from the challenged labeling, whether Defendant's representations have been made truthful. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018); *see id.* at 969-72.

8. Defendant HairGenics LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 4045 Spencer St., Las Vegas, Nevada 89119. Defendant does business under the brand name Propidren. Defendant manufactures, markets, and sells the Product throughout California and the United States, including through its Amazon storefront and the HairGenics website. Defendant is the seller of record on the Amazon listing through which Plaintiff purchased the Product, and Defendant—not Amazon—authored and controls the product title, listing images, and "About this item" content appearing on that listing.

## **JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A). This is a class action in which the aggregate claims of the

members of the proposed Classes exceed $5,000,000, exclusive of interest and costs; the proposed Classes consist of more than 100 members, *see* 28 U.S.C. § 1332(d)(5)(B); and at least one member of the proposed Classes is a citizen of a State different from Defendant. For the purposes of CAFA, Defendant is a citizen of the State under whose laws it is organized and of the State where it maintains its principal place of business. 28 U.S.C. § 1332(d)(10).

10. This Court has personal jurisdiction over Defendant because Defendant purposefully avails itself of the benefits of this forum by selling its Product to consumers, including Plaintiff, in this forum. Defendant derives substantial revenue from the sale of its Product in this State, with knowledge that its Product is being marketed and sold for use in this State.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims took place within this District.

12. For the purposes of intradistrict assignment, this action arises in Los Angeles County, where Plaintiff resides and where she purchased, received, and used the Product.

## FACTUAL ALLEGATIONS

### I. DEFENDANT MARKETS AND ADVERTISES THE PRODUCT TO CONSUMERS AS CAPABLE OF STIMULATING HAIR REGROWTH AND PREVENTING HAIR LOSS

13. Defendant sells the Product nationwide and in California online through Amazon.

14. The Product's packaging represents that the Product is a "DHT Blocker and Hair Growth Supplement" that "Prevents Hair Loss and Stimulates Follicles to Regrow Hair."




15. Defendant's Amazon product title represents that the Product is a "DHT Blocker & Hair Growth Capsules to Prevent Hair Loss & Stimulate Hair Follicles, to Stop Hair Loss & Regrow Hair," and describes the Product as a "Proprietary Anti-Hair Loss & Hair Regrowth Treatment."[1]

---

[1] *Propidren*, AMAZON, https://www.amazon.com/dp/B01NBH0C91?maas=maas_adg_api_590036332290294673_static_9_129&ref_=aa_maas&tag=maas&aa_campaignid=lv_radYrjoWMcKm5Tz88X&aa_adgroupid=lv_JvWiwXBgWSXVwnDCkR&aa_creativeid=lv_b4UXf1qDR5hlqG8uQH&m=A1WUGSOO6UTQOQ&gad_campaignid=24054628013&gbraid=0AAAAAqIwai3JLqCZwvqZydG4jfMZWpqaM&gclid=Cj0KCQjwkOvTBhDgARIsAKUNyRvhQlVVRTAKgFuSgALQagOnKOZMweAYEeI4WivIeQD8JWUw1ofAQH4aArOkEALw_wcB (last visited Aug. 11, 2026).


Propidren by HairGenics - DHT Blocker & Hair Growth Capsules to Prevent Hair Loss & Stimulate Hair Follicles, to Stop Hair Loss & Regrow Hair. Proprietary Anti-Hair Loss & Hair Regrowth Treatment.
Visit the Pronexa Store
4.2 (7,697)
Overall Pick
**1K+ bought** in past month
$39.99 ($0.67 / count)

16. Defendant's marketing includes the back of the Product's packaging, which lists the Product's supplement facts, as well as representations that the Product is "100% safe & effective."[2] The Product's Supplement Facts panel discloses that it contains "Saw Palmetto (Serenoa repens) (fruit) 200 mg."[3]

[2] *Id.*

[3] *Id.*




17. Defendant's marketing includes purported before-and-after images of consumers who used the Product, describing the Product as a "Powerful DHT Blocker."[4]

[4] *Id.*




18. Additional Product advertising represents that the Product "Prevents Hair Loss and Stimulates Growth and Regrowth."[5]




[5] *Id.*

19. Defendant's marketing further includes purported before-and-after images of a consumer's scalp, representing that the Product "Helps Future Hair Growth," "Improves Scalp Circulation," and "Blocks DHT."




20. Defendant's marketing also includes purported before-and-after images of a woman's scalp alongside the Product's packaging, representing that the Product "Energizes Follicular Hair Growth" and "Stops Hair Loss."



21. In the "About this item" section of Defendant's Amazon listing, Defendant represents:

> **About this item**
>
> - Scientific research on hair loss has shown that the number one factor in hair loss is the production of dihydrotestosterone or DHT. Propidren Hair Loss Supplements revolutionary formula contains clinically proven DHT blockers that work synergistically to stop hair loss and help regrow and thicken hair. Works for both men and women!
> - Contains Saw palmetto and other powerful dht blockers that help prevent DHT production - Saw Palmetto is essential to blocking 5-alpha-reductase, an enzyme that converts testosterone to DHT. DHT is a molecule inside of your body that's responsible for hair loss, so prohibiting the production of this hormone is key to preventing hair loss. Saw Palmetto is clinically proven to help stop hair loss and to induce hair regrowth.
> - Also includes Biotin to help strengthen weak and brittle hair - Biotin is a B Vitamin that produces keratin, increases hair elasticity (minimizing breakage), and wraps your hair in a protective layer to prevent it from becoming brittle and weak. Biotin helps to induce growth of both your hair and new skin cells, making them healthy and vibrant.
> - A highly effective combination of other clinically proven ingredients including Horsetail, Nettle Extract, Fo-TI, Pygeum Bark Powder and Green Tea Extract to help regenerate failing hair follicles and regrow your hair. Try it with our Propidren hair loss shampoo for unbelievable results!
> - A highly effective combination of other clinically proven ingredients including Horsetail, Nettle Extract, Fo-TI, Pygeum Bark Powder and Green Tea Extract to help regenerate failing hair follicles and regrow your hair. Try it with our Propidren hair loss shampoo for unbelievable results!

22. Defendant further represents in this section that the Product "[c]ontains Saw palmetto and other powerful dht blockers that help prevent DHT production," and that saw palmetto "is clinically proven to help stop hair loss and to induce hair regrowth."[6] Defendant also represents that the Product "includes Biotin to help strengthen weak and brittle hair" and to "induce growth of both your hair and new skin cells."[7]

23. Defendant also represents that the Product provides key benefits including as a "DHT blocker for men and women," that it is "formulated by doctors to regrow hair," that consumers will "start seeing hair growth in 60 days," and that the Product "[p]revents and reverses hair loss."[8]

---

[6] *Id.*

[7] *Id.*

[8] *Id.*




24. Additional marketing represents that the Product "[b]locks DHT to Stop Hair Loss," "Regrows & Thickens Hair," and is "Safe & Effective for Men and Women."[9]




[9] *Id.*

25. Defendant also markets and sells related Propidren-branded products, including Propidren Hair Growth Shampoo, Propidren Hair Growth Conditioner, and Propidren Hair Growth Serum, all of which make the same or substantially similar false and misleading claims as the Product.




| | Propidren by HairGenics - DHT Blocker & Hair Growth Capsules | Hairgenics Propidren Hair Growth Shampoo | Hairgenics Propidren Hair Growth Conditioner | Propidren by Hairgenics Hair Growth Serum |
|---|---|---|---|---|
| Indications & Description | DHT Blocker & Hair Growth Capsules to Prevent Hair Loss & Stimulate Hair Follicles, to Stop Hair Loss & Regrow Hair. | Color Safe Hair Growth Shampoo for Thinning and Balding Hair with Powerful DHT Blockers to Prevent Hair Loss, Nourish and Stimulate Hair Follicles and Help Regrow Hair. | Color Safe Hair Growth Conditioner to Moisturize & Nourish Hair, Support Hair Growth & Regrowth, and Potent DHT Blockers to Prevent Hair Loss. | Hair Growth Serum with Powerful DHT Blockers to Prevent Hair Loss, Stimulate Hair Follicles and Help Regrow Hair. |
| Key Active Ingredients | Powerful DHT Blockers, Proprietary Hair Growth Complex, Beta-Sitosterol, Horsetail Extract, Fo-tu, Pygeum Bark Powder, Green Tea Extract, Biotin, Zinc, Iron, Saw Palmetto | Hair growth peptides iincluding Tripeptide-1, nourishing B Vitamins, Collagen Seaweed Extract, Hydrolyzed Silk Proteins, Natural DHT Blockers including Saw Palmetto Extract | Growth Peptides Trideceth-12 & Tripeptide-1, nourishing amino acids, Pro-Vitamin B5, D-Biotin, Natural DHT Blockers. | DHT Blockers and Hair Growth Comples incuding Serenoa, Beta-Sitosterol, Equisetum SPP, Urtica Dioica, Polygonum Multiforum, Prunus Africana, Biotin, Green Tea Extract, Blue Agave. |
| Instructions for Use | Take two capsules daily with water to promote hair growth and regrowth and to block DHT and prevent hair loss. It should be taken for at least 90 days to start seeing significant hair growth and regrowth and a decrease in hair loss. | Apply shampoo to wet hair, lather and massage into hair and scalp. Leave on for 2 minutes to allow for deep penetration and full absorption. Rinse and repeat if necessary. | Apply conditioner to wet hair, lather and massage into hair and scalp. Leave on for 2 minutes to allow for deep penetration and full absorption. | Using dropper, apply one mL (one full dropper) directly onto scalp in the hair loss area. For best results, use twice daily on dry or towel dried hair. Use fingertips to massage solution into the scalp. |
| Use Products Together for Best Results | Step 1 | Step 2 | Step 3 | Step 4 |

26. It was during the time period alleged herein that Plaintiff accessed Defendant's Amazon listing, viewed the Advertised Claims and other misleading statements, and ultimately relied on them to purchase the Product from Defendant.

27. However, those claims are false and misleading.

## II. SCIENTIFIC EVIDENCE DISPROVES DEFENDANT'S ADVERTISED CLAIMS

### A. Defendant's "Clinically Proven" Representations Are False Because No Clinical Trial of the Product Exists

28. Hair loss has many causes, including androgenetic alopecia, thyroid imbalance, pregnancy, disease, and certain medications, each of which affects the growth and shedding phases of the hair cycle. Two drugs—topical minoxidil and oral finasteride—have been approved by the U.S. Food and Drug Administration ("FDA") for the treatment of androgenetic alopecia on the strength of adequate and well-controlled clinical trials. The Product is not one of them. Defendant markets the Product as a dietary supplement, a category that FDA does not review or approve for safety or efficacy before sale. Plaintiff does not allege that FDA approval was a precondition to selling the Product as a supplement. Plaintiff alleges that Defendant chose to market the Product using the language of clinical proof and medical treatment while possessing none of the evidence that language conveys to consumers.

29. Reasonable consumers understand a representation that an ingredient or product is "clinically proven" to mean that clinical testing was in fact performed and that the testing showed the advertised result. That understanding tracks the standard the Federal Trade Commission ("FTC") applies to health-benefit advertising, which requires "competent and reliable scientific evidence"—tests and studies conducted and evaluated objectively by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.[10] For an efficacy claim of the kind Defendant makes, that ordinarily requires at least one randomized, double-blind, placebo-controlled clinical trial ("RCT") on the product at issue.

30. No RCT has ever been conducted on the Product. Defendant's advertising cites no clinical trial, identifies no study, names no investigator, and points to no

---

[10] *Health Prods. Compliance Guidance*, FTC, https://www.ftc.gov/business-guidance/resources/health-products-compliance-guidance (last visited Aug. 11, 2026).

publication. Upon information and belief, no clinical trial of the Product exists, and Defendant possesses no clinical evidence specific to the Product. Defendant's representations that the Product's formula contains "clinically proven DHT blockers," that saw palmetto "is clinically proven to help stop hair loss and to induce hair regrowth," and that the Product contains "clinically proven ingredients including Horsetail, Nettle Extract, Fo-Ti, Pygeum Bark Powder and Green Tea Extract," are therefore false—not merely unsubstantiated—because each asserts the existence of clinical proof that does not exist.

### B. The Saw Palmetto in the Product Is Not the Preparation That Was Studied, and the Government's Own Review Contradicts Defendant's "Clinically Proven" Claim

31. The Product is formulated with saw palmetto, and many of Defendant's Advertised Claims are directed at the purported hair-growth benefits of this ingredient.

32. The U.S. Department of Health and Human Services' National Center for Complementary and Integrative Health ("NCCIH") reviewed the scientific literature concerning saw palmetto, including small studies testing saw palmetto (taken orally or applied to the scalp) for male-pattern hair loss, and concluded that, for that use, "the evidence is too limited to allow conclusions to be reached."[11]

33. This conclusion directly contradicts Defendant's representation that "Saw Palmetto is clinically proven to help stop hair loss and to induce hair regrowth."[12] This is not to say that Defendant lacks substantiation for its claims, rather, it is to say

---

[11] *Saw Palmetto*, NCCIH.NIH.GOV, https://www.nccih.nih.gov/health/saw-palmetto (last visited Aug. 11, 2026).

[12] *See Propidren*, AMAZON, https://www.amazon.com/dp/B01NBH0C91?maas=maas_adg_api_590036332290294673_static_9_129&ref_=aa_maas&tag=maas&aa_campaignid=lv_radYrjoWMcKm5Tz88X&aa_adgroupid=lv_JvWiwXBgWSXVwnDCkR&aa_creativeid=lv_b4UXf1qDR5hlqG8uQH&m=A1WUGSOO6UTQOQ&gad_campaignid=24054628013&gbraid=0AAAAAqIwai3JLqCZwvqZydG4jfMZWpqaM&gclid=Cj0KCQjwkOvTBhDgARIsAKUNyRvhQlVVRTAKgFuSgALQagOnKOZMweAYEeI4WivIeQD8JWUw1ofAQH4aArOkEALw_wcB (last visited Aug. 11, 2026).

that Defendant's claim about having affirmative clinical evidence to support its claims is itself false.

34. No published study has ever tested unstandardized saw palmetto fruit powder for hair growth. Every study that reports any effect on hair growth used either a defined saw palmetto extract standardized to its fatty-acid and phytosterol content, or an undisclosed proprietary blend in which saw palmetto was combined with other ingredients and its individual contribution could not be isolated. The preparation matters because saw palmetto's putative mechanism depends on its liposterolic fraction—its fatty acids and sterols—and not on the berry as such. A 2014 phytochemical analysis of 57 commercial saw palmetto products found a 177-fold difference in daily fatty-acid content among single-ingredient products alone, found that only nine of nineteen such products delivered fatty acids within the range associated with therapeutic effect, and identified products that failed the European Pharmacopoeia requirement that lauric acid constitute at least twenty percent of total fatty acids.[13]

35. The Product's Supplement Facts panel discloses only "Saw Palmetto (Serenoa repens)(fruit) 200 mg." *See supra* ¶ 16. It states no extract, no standardization, no extract ratio, and no fatty-acid content. The panel's own vocabulary confirms the distinction: every other botanical in the formula is identified as an extract or a powder—"Horsetail Extract," "Nettle Extract," "Green Tea Extract," "Pygeum Bark Powder"—while saw palmetto is identified only by the plant part, "(fruit)." *Id*. Upon information and belief, the saw palmetto in the Product is unstandardized fruit material that does not deliver the liposterolic fraction on which any claim of clinical support depends. Defendant's representation that the saw palmetto in the Product is "clinically proven" to stop hair loss and induce hair regrowth

---

[13] Anthony Booker et al., *A Phytochemical Comparison of Saw Palmetto Products Using Gas Chromatography and ¹H Nuclear Magnetic Resonance Spectroscopy Metabolomic Profiling*, 66 J. Pharm. & Pharmacology 811 (2014).

is false for this independent reason: whatever the published studies show about standardized extracts, no study has tested what is in Defendant's Product.

### C. *The Published Literature Refutes Defendant's Biotin Representations*

36. The Product is also formulated with biotin, and Defendant's Advertised Claims rely in part on biotin's purported ability to strengthen and grow hair.

37. Research examining biotin's efficacy for hair loss dates back to a 1965 study in which 46 women were treated with biotin and observed for effects on their hair roots; the study's authors concluded that biotin supplementation produced no change in the condition of the hair roots in any of the subjects.[14]

38. More recently, in a peer-reviewed article published through the National Center for Biotechnology Information, researchers concluded that although biotin is widely used as a hair and nail growth supplement, research demonstrating its efficacy for that purpose "is limited," and that outside of uncommon cases of biotin deficiency or specific pathologies, there is a "lack of sufficient evidence for supplementation in healthy individuals."[15]

39. Defendant also represents that the Product is "100% Safe & Effective." That representation is false as well. Each two-capsule serving delivers 2 mg of biotin, more than sixty times the 30-microgram Daily Value. The FDA has warned that biotin taken at supplement doses "can significantly interfere with certain lab tests and cause incorrect test results which may go undetected," including troponin tests used to diagnose heart attacks.[16] Each serving also delivers 25 mg of iron, and accidental

---

[14] *See* Pawlowski, A. & Kostanecki, W., "Effect of biotin on hair roots and sebum excretion in women with diffuse alopecia," POLISH MED. J., 1965 vol. 5, pp 447-452.

[15] Patel, D. P., Swink, S. M., Castelo-Soccio, L., *A Review of the Use of Biotin for Hair Loss*, SKIN APPENDAGE DISORD. 2017 Apr. 27;3(3):166.

[16] *See UPDATE: The FDA Warns that Biotin May Interfere with Lab Tests: FDA Safety Communication*, https://us.pagefreezer.com/en-US/wa/browse/456c38cb-745a-47a8-b856-45444fd4b29d?find-by-timestamp=2022-06-16T13:39:59Z&url=https:%2F%2Fwww.fda.gov%2Fmedical-devices%2Fsafety-communications%2Fupdate-fda-warns-biotin-may-interfere-lab-tests-fda-safety-

overdose of iron-containing products is a leading cause of fatal poisoning in children under six.[17] A product that carries these risks is not "100% safe."

40. These government publications and peer-reviewed studies concerning saw palmetto and biotin directly contradict Defendant's Advertised Claims regarding the Product's ability to regrow hair or prevent hair loss.

**D. *Defendant's "Clinically Proven" Claims Are False***

41. According to the FTC's Health Products Compliance Guidance, advertisers may not consider studies in isolation; rather, the surrounding body of scientific evidence is just as important as the internal validity of any individual study, and studies relied upon by an advertiser should be largely consistent with that surrounding evidence.[18] Wide variation or inconsistency among study outcomes raises serious questions about the adequacy of an advertiser's substantiation.

42. Asserting that a product is "clinically" proven must also be supported by statistically significant results that "provide real consequences for consumer health."[19] Such claims typically require randomized controlled trials as support.

43. Plaintiff purchased the Product with the reasonable expectation that Defendant possessed substantial clinical evidence supporting the Advertised Claims.

---

communication&timestamp=2022-06-16T07:11:24Z (last visited Sep. 18, 2026); *Biotin Interference with Troponin Lab Tests - Assays Subject to Biotin Interference*, https://www.fda.gov/medical-devices/in-vitro-diagnostics/biotin-interference-troponin-lab-tests-assays-subject-biotin-interference (last visited Sep. 18, 2026).

[17] *See* 21 C.F.R. § 101.17(e)(1) (Requiring labels on dietary supplements containing iron or iron salts to display "WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.")

[18] *See Health Prods. Compliance Guide*, FTC.GOV, https://www.ftc.gov/system/files/ftc_gov/pdf/Health-Products-Compliance-Guidance.pdf (last visited Aug. 11, 2026).

[19] *Id.*

Had Plaintiff known that the Product's efficacy claims were false and deceptive, she would not have purchased the Product, or would have paid substantially less for it.

### E. The Product Is an Unapproved New Drug and Is Misbranded Under Federal and California Law.

44. The Federal Food, Drug, and Cosmetic Act ("FDCA") defines a "drug" to include any article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease." 21 U.S.C. § 321(g)(1)(B). Androgenetic alopecia and other forms of pathological hair loss are diseases.

45. Defendant markets the Product as a "Hair Regrowth Treatment" that "Prevents Hair Loss," "Stops Hair Loss," and "[p]revents and reverses hair loss." Defendant's own Amazon listing sets out the Product's intended use under the heading "Indications & Description." These are disease claims, not permissible structure/function claims under 21 U.S.C. § 343(r)(6).

46. Because the Product is intended to treat and prevent disease, it is a drug. Because no new drug application has been approved for it, it is an unapproved new drug that may not lawfully be introduced into interstate commerce. 21 U.S.C. § 355(a).

47. The Product is separately misbranded. The Supplement Facts panel declares 2 mg of biotin as "667%" of the Daily Value. The Daily Value for biotin is 30 micrograms, so 2 mg is approximately 6,667% of the Daily Value. Defendant's declared percentage is understated by a factor of ten and appears to rest on a Daily Value that was superseded and whose compliance date has long since passed. *See* 21 C.F.R. §§ 101.9, 101.36. The same panel declares iron at 139% of the current Daily Value, confirming that the biotin figure is not consistent with the use of an older reference standard but an error on the label Plaintiff received.

48. Upon information and belief, Defendant has not submitted to the FDA the notification required by 21 U.S.C. § 343(r)(6)(C) for the structure/function claims it makes for the Product.

49. California's Sherman Food, Drug, and Cosmetic Law adopts these federal requirements as the law of California. Cal. Health & Safety Code § 110100. It is unlawful to manufacture, sell, deliver, or offer for sale any misbranded food, and dietary supplements are "food." Cal. Health & Safety Code §§ 110660, 110760. Defendant's violations of the Sherman Law are independent predicates for Plaintiff's claim under the unlawful prong of the UCL, and do not depend on any showing that the Product is ineffective. In borrowing these violations, Plaintiff does not seek to enforce the FDCA or to compel any federal approval; the Sherman Law adopts the federal food-labeling requirements as the law of California, and private enforcement through the UCL of those identical state-law requirements is expressly permitted and is not preempted. *See* Cal. Health & Safety Code § 110100; *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088–89 (2008); *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 849–50 (9th Cir. 2024).

50. Defendant's Before-and-After Imagery Is Independently Deceptive. Defendant's listing displays before-and-after photographs of consumers' scalps and an illustrated "BEFORE"/"AFTER" hair follicle graphic alongside the claim "POWERFUL DHT BLOCKER." Defendant does not disclose whether the depicted individuals used the Product, for how long, what other treatments they used, whether they were compensated, or whether the depicted results are typical of what consumers experience.

51. Upon information and belief, the before-and-after images are not authentic depictions of results achieved with the Product. Reasonable consumers understand such imagery to convey that the depicted results are representative of what the Product achieves. The imagery is therefore deceptive, independent of the textual Advertised Claims. *See* 16 C.F.R. pt. 255; 16 C.F.R. pt. 465.

52. Although Defendant is best situated to know the true composition and substantiation, if any, for the Product, to the extent necessary, Plaintiff has satisfied the requirements of Rule 9(b), which require a plaintiff to identify "the who, what,

when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiff establishes those elements with sufficient particularity as follows:

a) **WHO:** Defendant HairGenics LLC.

b) **WHAT:** Defendant's conduct here was, and continues to be, fraudulent because Defendant intentionally marketed and advertised the Product as capable of stimulating hair regrowth, stopping and preventing hair loss, and being "clinically proven" effective, when the scientific and government literature concerning the Product's key ingredients directly contradicts those claims. These false and misleading representations were material to Plaintiff and the Classes because they would not have paid the same amount for the Product, or would not have purchased the Product at all, had they known the Product was incapable of delivering the benefits promised in the Advertised Claims. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its strategic phrasing of the Advertised Claims as clinically supported and doctor-formulated, yet it continued to pervasively market the Product in this manner in California and the United States.

c) **WHEN:** Defendant made the material misrepresentations described above throughout the Class Period, including on October 8, 2023, the date on which Plaintiff viewed Defendant's Amazon listing and purchased the Product, and Defendant continues to make them today.

d) **WHERE:** On Defendant's Amazon listing—specifically the product title, the listing images depicting the front and back of the Product's packaging, and the "About this item" section—and on the Product's packaging itself, which Plaintiff received with the Product.

e) **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Product by representing and warranting that the Product could deliver hair-growth and hair-loss-prevention benefits such as those specified in the Advertised Claims. Defendant omitted material disclosures to consumers about the true, scientifically supported capabilities of the Product.

f) **INJURY:** Plaintiff and members of the Classes purchased and paid a premium (up to the full purchase price), or otherwise paid more for the Product than they would have or alternatively would not have purchased the Product at all, absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and two Classes of all others similarly situated pursuant to Federal Rule of Civil Procedure 23, defined respectively as:

> **Nationwide Class:** All persons in the United States who, within the applicable limitations period, purchased the Product for personal, family, or household use and not for resale (the "Nationwide Class").
>
> **California Subclass:** All persons who, within the applicable limitations period, purchased the Product in California for personal, family, or household use and not for resale (the "California Subclass," together with the Nationwide Class, the "Classes").

54. The Classes do not include (1) Defendant and its officers, directors, and employees; (2) the Judge and Magistrate Judge to whom this case is assigned and their staff and immediate families; (3) Plaintiff's counsel and Defendant's counsel.

55. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, including as to the Propidren Hair Growth Shampoo, Conditioner, and Serum products.

56. ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

57. ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the thousands at least.[20] Members of the Classes may be notified of the pendency of this action by e-mail, mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

58. ***Existence and Predominance of Common Questions of Law and Fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant's Advertised Claims regarding the Product were false and misleading;

(b) Whether reasonable consumers would understand Defendant's representations and warranties concerning the efficacy of the Product—including but not limited to the Advertised Claims—were untrue and misleading;

(c) Whether Defendant's representations and warranties regarding its Product were material;

(d) Whether Defendant was unjustly enriched as a result of its unlawful conduct as alleged in this Complaint;

(e) Whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

[20] *Propidren*, AMAZON, https://www.amazon.com/Propidren-HairGenics-Palmetto-Stimulate-Follicles/dp/B01NBH0C91I (last visited Aug. 12, 2026) (7,675 reviews on a single Amazon store Propidren product alone).

(f) Whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and

(g) Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

59. ***Typicality***: The claims of the named Plaintiff are typical of the claims of other members of the Classes in that Plaintiff was exposed to Defendant's false and misleading advertising about the efficacy of the Product, purchased the misleadingly advertised Product in reliance on those representations and warranties, and suffered a loss as a result of that purchase.

60. ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

61. ***Superiority***: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation make it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action. In addition, even if Class Members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is

essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

62. Plaintiff seeks certification of the Classes under Federal Rule of Civil Procedure 23(b)(3) and, as to the declaratory and injunctive relief sought, under Rule 23(b)(2). In the alternative, Plaintiff seeks certification of particular issues under Rule 23(c)(4). Class membership is ascertainable from Defendant's and third-party retailers' sales records, from consumers' order histories and receipts, and from self-identifying affidavits.

## CAUSES OF ACTION

## COUNT I

### Violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (On Behalf of Plaintiff and the California Subclass)

63. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

65. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

66. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

67. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

68. Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

69. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by advertising that the Product was capable of scientifically unsupported hair-growth and hair-loss-prevention benefits.

70. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

71. Prior to filing this action, on April 28, 2026, Plaintiff sent Defendant a notice and demand letter pursuant to Cal. Civ. Code § 1782; Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq*.; and Cal. Civ. Code §§ 1750, *et seq*. This letter was sent via certified mail, return receipt requested, that identified the Advertised Claims, explained why the Product does not conform to them, and demanded that Defendant take corrective action. Defendant failed to remedy the issues raised in the letter.

72. Plaintiff and the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

73. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

74. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

75. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

76. Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for personal use. In so doing, Plaintiff relied upon Defendant's false representations of the Product's efficacy—including but not limited to the Advertised Claims—when the Product was actually incapable of delivering upon those falsely marketed claims. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

77. Plaintiff and the California Subclass lack an adequate remedy at law for the equitable relief sought under the UCL and, as alleged in the corresponding counts, under the FAL. First, the restitution Plaintiff seeks is measured by the money and profits Defendant obtained through its unlawful conduct, not by Plaintiff's out-of-pocket loss; it therefore may be broader than, and is not equivalent to, an award of legal damages, and may be awarded on a showing that would not support damages proven to the certainty the law requires. Second, only prospective injunctive relief can redress the ongoing injury alleged above, because Plaintiff intends to purchase the Product in the future but cannot rely on Defendant's representations while the conduct continues, and no award of damages can remedy that prospective harm. Plaintiff pleads these facts to establish that her legal remedies are inadequate, and pleads her equitable claims in the alternative to her legal claims. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); Fed. R. Civ. P. 8(d)(3).

78. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is "unfair"

if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

79. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

80. Defendant acted with knowledge and intent.

81. Plaintiff alleges a claim under all three prongs of the UCL.

82. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers. Whether Defendant's representations are likely to deceive a reasonable consumer is governed by the "reasonable consumer" test and is generally a question of fact not suited to resolution at the pleading stage. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *Moore*, 966 F.3d at 1017.

83. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq*. and the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9), and (a)(16), as alleged above.

84. Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq*. in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive

Advertised Claims have misled consumers into purchasing the Product over other truthfully labeled competitors.

85. Plaintiff and the California Subclass suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the purported benefits of the Product.

86. There is no benefit to consumers or competition from deceptively marketing that the Product is capable of achieving the Advertised Claims when it is not scientifically supported in doing so.

87. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

88. Plaintiff and the California Subclass could not have reasonably avoided their injury or known that the Product's prominent marketing of the false representations, including but not limited to the Advertised Claims, were not scientifically supported. As such, they could not have reasonably avoided the injury they suffered.

89. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the California Subclass seek an order requiring Defendant to (a) make restitution of the money Defendant acquired from them by means of the unfair competition alleged herein; (b) cease the unlawful, unfair, and fraudulent practices alleged herein and undertake corrective advertising; and (c) pay Plaintiff's reasonable attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

90. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

91. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

92. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Plaintiff, members of the California Subclass, and the public. As described throughout this Complaint, Defendant misrepresents that the Product is capable of helping users achieve the hair-growth and hair-loss-prevention benefits marketed in the Advertised Claims and in other representations Defendant uses to market the Product's efficacy, when in fact, the Product is not scientifically supported in doing so.

93. By Defendant's actions, it has disseminated uniform advertising, including but not limited to the Advertised Claims, regarding the Product across California and the United States. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public.

94. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represents that the Product is capable of achieving the benefits promised in the Advertised Claims.

95. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law. Plaintiff and the members of the California Subclass based their

purchasing decisions on Defendant's material false and misleading representations and warranties about the efficacy of its Product. Plaintiff and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

96. The misrepresentations by Defendant of the material facts described and detailed above constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

97. Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**COUNT IV**

**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Classes)**

98. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

99. Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

100. Plaintiff brings this claim under the laws of the State of California.

101. Plaintiff provided Defendant with timely notice of its breach of express warranty. As alleged above, prior to filing this action, on April 28, 2026, Plaintiff sent Defendant a notice and demand letter by certified mail, return receipt requested, pursuant to Cal. Civ. Code § 1782; Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq*.; and Cal. Civ. Code §§ 1750, *et seq*., that identified the Advertised Claims, explained why the Product does not conform to them, and demanded that Defendant cure. Defendant failed to cure within a reasonable time. To the extent any further notice is

required, it is excused as futile given Defendant's continued dissemination of the Advertised Claims.

102. The Advertised Claims are affirmations of fact and promises relating to the Product, and descriptions of the Product, that Defendant made to Plaintiff and Class Members through the Product's labeling and through Defendant's Amazon listing. Cal. Com. Code § 2313. They became part of the basis of the bargain when Plaintiff and Class Members purchased the Product, and Plaintiff was exposed to and relied on those affirmations before completing her purchase, as alleged above. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015). Vertical privity is not required here because Defendant made these representations directly to consumers through labeling and advertising on which consumers relied, notwithstanding that the transaction was completed through Amazon. *See Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1162 (S.D. Cal. 2015).

103. The terms of the contract include the promises and affirmations of fact made by Defendant in advertising the Product, including but not limited to the Advertised Claims.

104. This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

105. As set forth above, Defendant purports through its labeling, marketing, and packaging to create an express warranty that the Product is capable of achieving the hair-growth and hair-loss-prevention benefits marketed in the Advertised Claims. However, Defendant breached its express warranties about the Product because the science demonstrates that the Advertised Claims are not supported, thereby rendering Defendant's representations regarding the Product—including but not limited to the Advertised Claims—false and misleading. Simply put, the Product does not perform up to Defendant's representations and warranties.

106. Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

107. Plaintiff and the members of the Classes would not have purchased the Product had they known its true nature.

108. As a result of Defendant's breach of express warranty, Plaintiff and each member of the Classes suffered financial damage and injury and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

109. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

110. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

111. This claim is pleaded in quasi-contract and in the alternative to Plaintiff's legal claims; that it may overlap with Plaintiff's statutory claims is not a ground for dismissal. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); Fed. R. Civ. P. 8(d)(2)–(3).

112. Plaintiff and the Classes conferred a benefit on Defendant in the form of monies paid to purchase Defendant's Product.

113. Defendant voluntarily accepted and retained this benefit.

114. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Product, which was misbranded and not as advertised, it would be unjust and inequitable for Defendant to retain monies received from selling its falsely advertised Product.

115. Plaintiff pleads this claim in quasi-contract, in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8(d)(3). Legal remedies available to Plaintiff and the members of the Classes are inadequate because they are

not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, which may exceed the available damages at law. Plaintiff seeks restitution measured by the amounts by which Defendant was unjustly enriched at the expense of Plaintiff and the Classes.

**COUNT VI**
**Violation of Nevada's Deceptive Trade Practices Act**
**Nev. Rev. Stat. § 598.0903, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

116. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

117. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant. Plaintiff pleads this claim in the alternative to the California statutory claims, to the extent the Court determines that California law does not govern the claims of Class Members who purchased the Product outside California.

118. Nevada law governs the claims of the Nationwide Class. Defendant maintains its principal place of business in Las Vegas, Nevada, and the marketing, labeling, and advertising decisions challenged in this Complaint—including the decision to represent the Product as "clinically proven," and capable of regrowing hair and blocking DHT—were made at and emanated from Defendant's Nevada headquarters. Nevada therefore has the predominant interest in regulating the conduct at issue, which occurred within its borders.

119. The Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598.0903 *et seq.*, prohibits deceptive trade practices in the conduct of a business. A person engages in a deceptive trade practice when, in the course of business, the person

knowingly makes "a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale." Nev. Rev. Stat. § 598.0915(5). A person also engages in a deceptive trade practice by representing that goods are of a particular standard, quality, or grade when the person knows or should know that they are of another, *id.* § 598.0915(7); by knowingly making any other false representation in a transaction, *id.* § 598.0915(15); by knowingly failing to disclose a material fact in connection with the sale of goods, *id.* § 598.0923(1)(b); and by knowingly violating a state or federal statute or regulation relating to the sale of goods, *id.* § 598.0923(1)(c).

120. Nevada Revised Statutes § 41.600 authorizes a private civil action by "any person who is a victim of consumer fraud," Nev. Rev. Stat. § 41.600(1), and defines "consumer fraud" to include a deceptive trade practice as defined in Nev. Rev. Stat. §§ 598.0915 to 598.0925, inclusive. *Id.* § 41.600(2)(e).

121. To prevail on a private NDTPA claim for damages, a plaintiff must establish (1) an act of consumer fraud by the defendant that (2) caused (3) damage to the plaintiff. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). A deceptive trade practice under Chapter 598 need be proven only by a preponderance of the evidence. *Betsinger v. D.R. Horton, Inc.*, 126 Nev. 162, 166, 232 P.3d 433, 436 (2010). A defendant acts "knowingly" when it is aware that the facts constituting the practice exist; intent to deceive need not be shown. *Poole v. Nevada Auto Dealership Invs., LLC*, 135 Nev. 280, 284, 449 P.3d 479, 483 (Nev. Ct. App. 2019).

122. Defendant engaged in deceptive trade practices within the meaning of Nev. Rev. Stat. § 598.0915(5), (7), and (15), and § 598.0923(1)(b)–(c), by knowingly representing—uniformly and to every member of the Nationwide Class—that the Product is "clinically proven" to stop hair loss and regrow hair, that it "blocks DHT," "regrows and thickens hair," and is "100% safe and effective," when those representations were false and misleading as alleged above, and by knowingly failing to disclose that no clinical trial of the Product exists and that the Product is misbranded.

123. Defendant's misrepresentations and omissions concerned material facts. A reasonable person would attach importance to whether a hair-loss product is clinically proven and safe in deciding whether to purchase it. *See Poole*, 135 Nev. at 281, 449 P.3d at 481. Because the Advertised Claims appeared uniformly on the Product's packaging and on Defendant's Amazon listing and were seen by Class Members in connection with their purchases, the materiality of those uniform representations gives rise to a class-wide inference of reliance.

124. Plaintiff and the Nationwide Class relied on Defendant's representations and were injured as a result. They paid a price premium for the Product and received a product worth less than what they paid for and less than as represented; had they known the truth, they would not have purchased the Product or would have paid substantially less for it. Plaintiff and the Nationwide Class have therefore sustained damages within the meaning of Nev. Rev. Stat. § 41.600(3)(a). *See Leigh-Pink v. Rio Props., LLC*, 138 Nev. 530, 534-36, 512 P.3d 322, 327–28 (2022).

125. This claim is timely. An action alleging a deceptive trade practice must be commenced within four years and accrues when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice. Nev. Rev. Stat. § 11.190(2)(d). As alleged above, Plaintiff did not discover the falsity of the Advertised Claims until early 2024.

126. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and the Nationwide Class are entitled to recover the damages they have sustained, equitable relief, and their costs and reasonable attorney's fees. Nev. Rev. Stat. § 41.600(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e) For pre-judgment and post-judgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper; and

h) For an order requiring Defendant to undertake a corrective advertising campaign and to cease disseminating the Advertised Claims;

i) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 24, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA VENUE DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am counsel of record for Plaintiff Carrie Saks, who currently resides in Manhattan Beach, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d). Plaintiff resides in Los Angeles County, California, and purchased and received the Product in Los Angeles County, California, which is within this District. Defendant also transacts substantial business in this District, including sales of the Product at issue, and Defendant advertised and marketed the Product to Plaintiff in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California on September 24, 2026.

*/s/ L. Timothy Fisher*
L. Timothy Fisher